IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TIMOTHY FERGUSON                                                        PLAINTIFF

VS.                                 CIVIL NO. 06-2154

MICHAEL J. ASTRUE,[1]
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION          DEFENDANT

**MEMORANDUM OPINION**

Timothy Ferguson ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits ("DIB") under Title II of the Act.

**Background:**

The application for DIB now before this court was filed on April 7, 2004, alleging an onset date of November 12, 2003, due to chronic lower back, right leg, neck, and bilateral shoulder pain, as well as hypertension. (Tr. 11, 50-53). An administrative hearing was held on August 9, 2005. (Tr. 34, 158-184).

At the time of the administrative hearing, plaintiff was forty-one years old and possessed a high school education. (Tr. 14). The record reveals that he had past relevant work ("PRW") experience as an auto mechanic. (Tr. 14).

The Administrative Law Judge ("ALJ"), rendered an unfavorable decision on May 23, 2006. (Tr. 7-16). He concluded that plaintiff's impairments were severe but determined that they did not

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. The ALJ then found that plaintiff retained the residual functional capacity ("RFC") to perform a wide range of sedentary work, limited by his ability to stand/walk for two hours out of an eight-hour workday; never climb, balance, stoop, crouch, kneel, or crawl; frequently perform fine manipulation; limited grip strength; and, need to avoid all exposure to heights. (Tr. 13). With the assistance of a vocational expert, the ALJ determined that plaintiff could perform work as a driver, interviewer, and call-out operator. (Tr. 15-16).

On July 7, 2006, the Appeals Council declined to review the ALJ's decision. (Tr. 2-4). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed briefs and the case is now ready for decision. (Doc. # 12, 13)

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents

2

the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

3

**Evidence Presented:**

On March 16, 1999, Dr. L. Gordon Sasser treated plaintiff for right arm and hand pain. (Tr. 118). He stated that the pain improved over the weekends with rest. An examination revealed active resistance on gripping with the right hand. Dr. Sasser diagnosed possible carpal tunnel syndrome. He advised plaintiff to decrease his activity, use warm soaks, and take Ibuprofen 800mg and Vicoprofen. Dr. Sasser also injected the area and recommended that nerve conduction studies be performed. (Tr. 118).

Plaintiff was hospitalized from August 16 -19, 1999, for unstable angina, coronary artery disease, hyperlipidemia, and hypertension. (Tr. 137). Cardiac catheterization initially showed a ninety percent blockage. However, repeat testing revealed only a thirty percent blockage. Dr. Lonnie Harrison determined that the first findings were due to spasm. He then prescribed Plavix to stabilize the plaque. (Tr. 137).

On January 22, 2003, plaintiff complained of pain in his right arm. (Tr. 116). His pain reportedly worsened with activity and exertion. Plaintiff's blood pressure was 164/100. Dr. Sasser noted tenderness at the insertion of deltoid muscles of the right upper extremity. X-rays of plaintiff shoulder were normal, as were his sensory and motor function and range of motion. (Tr. 116-117). Dr. Sasser diagnosed plaintiff with degenerative arthritis and tendonitis with overuse syndrome. He prescribed Ibuprofen, ice, and heat. Dr. Sasser also gave plaintiff a Decadron injection and a prescription for Ultram. He then recommended a nerve conduction study. Notes indicate that plaintiff would need to make financial arrangements for the testing before scheduling an appointment. (Tr. 116).

Chiropractic records from Dr. Steven Matthews indicate that plaintiff had shown some improvement by June 2003. (Tr. 143). On June 28, 2003, he reported that he felt like a new man and denied experiencing severe pain. Then, on June 30, 2003, plaintiff was doing ok but felt weak. (Tr. 143).

On August 21, 2003, plaintiff reported that Ibuprofen had helped the pain, as had the Decadron injections. (Tr. 115). However, he indicated that he could not afford any further evaluation. Records reveal that his blood pressure that day was 150/100. An examination showed a full range of motion in his shoulder, elbow, wrist, hand, and fingers with a "slight" decrease in grip strength on the right hand compared to the left. Again, Dr. Sasser advised plaintiff to decrease his activities and apply heat. He also prescribed repeat Decadron injections, Ibuprofen, and Ultram. Dr. Sasser told plaintiff that if his blood pressure continued to be high he would prescribe hypertensive medication. (Tr. 115).

On October 22, 2003, records indicate that plaintiff was still very stiff. (Tr. 143). He was, however, walking more upright and had less spasm. (Tr. 143). Then, on November 4, 2003, plaintiff was reportedly sore but feeling better. (Tr. 143). Some muscle spasm was noted. (Tr. 143).

On November 12, 2003, plaintiff complained of lower back pain. (Tr. 143). He indicated that his back had popped a few times before becoming sore. Plaintiff stated that his neck was also sore and he was experiencing headaches. Chiropractic records reveal that plaintiff was noticeably shaking all over. A decreased range of motion was also noted. (Tr. 143).

On November 14, 2003, plaintiff was improving. (Tr. 143). Progress notes from Dr. Matthews's office indicate that he was no longer shaking but was still sore and guarding. The muscle

5

spasms had decreased but pain was still noted on range of motion. (Tr. 143). By November 17, 2003, however, plaintiff was moving around better. (Tr. 143). Less spasms were also noted. (Tr. 143).

On November 21, 2003, plaintiff had only mild soreness. (Tr. 143). Then, on November 22, 2003, he reported no neck pain and an examination revealed a full range of motion in his neck. (Tr. 116). Dr. Sasser also noted a good range of motion in plaintiff's elbow, wrist, hand, and fingers. (Tr. 116).

On December 1, 2003, chiropractic notes reveal that plaintiff had improved. Minimal muscle spasm was noted. (Tr. 143). Further, by December 15, 2003, he was doing much better (Tr. 143).

On July 29, 2004, plaintiff had a consultative exam with Dr. Michael Westbrook. (Tr. 119-125). Plaintiff complained of back pain, bilateral shoulder pain, and pain in his right leg radiating down the back of his thigh and the front of his right lower leg. Records indicate that plaintiff had a full range of motion in his cervical and lumbar spine and a full range of motion in his extremities. (Tr. 122). Dr. Westbrook also noted a normal gait and coordination, although plaintiff did experience pain while performing the heel and toe walk. (Tr. 123). However, he concluded that plaintiff's grip strength was only seventy percent of normal. Dr. Westbrook diagnosed plaintiff with sclerosis of the facet joints of the lower lumbar, shoulder pain, hand numbness with possible carpal tunnel syndrome, neck pain, and headaches. He did not assess any limitations in plaintiff's ability to walk, stand, sit, lift, carry, handle, finger, see, hear, or speak. (Tr. 125).

On August 2, 2004, plaintiff blood pressure was high. (Tr. 149). He indicated that his shoulder pain had improved since he had quit work. Although he had reportedly injured his back one year ago, no surgery had been recommended. Dr. Sasser noted some paralumbar tenderness but no

AO72A
(Rev. 8/82)

other limitations. He diagnosed plaintiff with hypertension and arthritis with overuse syndrome. Plaintiff was prescribed Metoprolol, HCTZ, Ibuprofen, Ultram, and a low fat and low cholesterol diet. Dr. Sasser also advised him to monitor his blood pressure. (Tr. 149).

On November 8, 2004, plaintiff was very emotional and teary. (Tr. 148). He indicated that he had thought about "checking out." Plaintiff reported low self esteem, excessive sleeping, and avoidance of family members. An examination revealed abnormalities in his gait, spine, and lower extremities. Plaintiff was assessed with depression and hypertension and prescribed Ultram, Lexapro, Benicar, and HCTZ. (Tr. 148).

On December 8, 2004, plaintiff indicated that he had stopped the Lexapro because it made him feel dazed. (Tr. 147). His blood pressure medication was working well and the nurse noted that he looked good. However, plaintiff stated that he felt as though he was "getting down again." Following a normal exam, plaintiff was switched from Lexapro to Paxil CR. He was also given prescriptions for Benicar, Ultram, and HCTZ. (Tr. 147).

On January 3, 2005, Dr. Sasser diagnosed plaintiff with depression. (Tr. 146). According to progress notes, the Paxil initially made plaintiff anxious. It then caused his blood pressure to rise. As a result, plaintiff discontinued the medication and then restarted it later. However, the second time, the medication made him very tired. Although, plaintiff also stated that his pain had increased due to the holiday activities, his physical exam was normal. Dr. Sasser discontinued the Paxil and prescribed Zoloft in its place. He also directed plaintiff to continue taking the Ibuprofen and Ultram. (Tr. 146).

7

On August 12, 2005, Dr. Ronald Schlaback, a partner of Dr. Sasser's, completed an RFC assessment. (Tr. 151-153). He indicated that Dr. Sasser was out of the office for an extended period of time. Dr. Schlaback concluded that plaintiff could lift less than ten pounds and stand and walk for less than two hours during an eight-hour workday. He noted that plaintiff used a hand-held assistive device for ambulation and would need to periodically alternate sitting and standing to relieve his pain and discomfort. Dr. Schlaback determined that plaintiff would be limited with regard to his ability to push and pull with all of his extremities due to arm pain, hand numbness, and lower back pain with radiation. He also advised that plaintiff should never climb or crouch; occasionally balance, kneel, and crawl; and, limit his exposure to noise, vibration, humidity/wetness, and hazards. Further, Dr. Schlaback indicated that plaintiff's ability to reach with his right arm and handle and finger was limited. (Tr. 151-153).

On October 28, 2005, plaintiff was examined by Dr. Robert C. Thompson. (Tr. 154-157). Plaintiff complained of high blood pressure, arthritis in his right shoulder, and his right leg being longer than his left. Dr. Thompson noted a markedly decreased range of motion in plaintiff's lumbar spine with a normal range of motion in his upper and lower extremities. An examination also revealed a slightly decreased range of motion in plaintiff's cervical spine. However, Dr. Thompson stated that "considerable trepidation and limitations in compliance suggest no true mechanical limitations." He then determined that plaintiff did have decreased sensation in the distal portions of his right arm over his thumb and index finger. X-rays revealed mild degenerative arthritis of the cervical and lumbar spine, while radiographs of his shoulder were normal.

8

Dr. Thompson also completed a physical RFC assessment. He determined that plaintiff could occasionally lift up to ten pounds and stand or walk two hours in an eight-hour workday (Tr. 157). Dr. Thompson concluded that plaintiff should never climb, balance, stoop, crouch, kneel, or crawl and should avoid all exposure to heights and moving machinery. (Tr. 157).

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

Plaintiff has alleged a variety of disabling impairments, including chronic lower back, right leg, neck, and bilateral shoulder pain, as well as hypertension. Neither plaintiff's testimony nor the objective medical evidence supports plaintiff's allegations.

As outlined above, we note that, during the relevant time period, plaintiff did seek treatment for chronic pain in his back, right leg, neck, and bilateral shoulders. We note, however, that the majority of his physical examinations have yielded minor limitations and x-rays have revealed only

9

mild degenerative arthritic changes of the lumbar and cervical spine, as well as shoulder. (Tr. 115, 116, 119-125, 146, 147, 149, 154-157). For this, plaintiff has received conservative treatment, namely prescriptions for Ibuprofen and Ultram, and a few injections of Decadron. *See Gowel v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding fact that physician prescribed conservative treatment weighed against plaintiff's subjective complaints). Plaintiff has even admitted that he is not a candidate for surgery. (Tr. 149). *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (discounting the claimant's allegations of disabling pain based on the conservative nature of his treatment, which included exercises, a back brace, and medication, but never surgery).

Although plaintiff contends that the ALJ failed to develop the record with regard to his mental impairments, we do not agree. Plaintiff sought treatment for depression on only three occasions during the relevant time period. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Although the first two medications prescribed had unacceptable side effects, the record says nothing about side effects from the third medication, Zoloft. (Tr. 146, 147, 148). *Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (alleged side effects were properly discounted when plaintiff did not complain to doctors that her medication made concentration difficult). Further, there is no evidence in the record to suggest that this medication was ineffective. As such, we do not believe that the ALJ erred in concluding that plaintiff's mental impairment was non-severe.

Plaintiff contends that his failure to seek more consistent treatment or undergo more testing is excused due to his financial hardship. It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem ." *See Shannon v. Chater*, 54

F.3d 484, 486 (8th Cir.1995). However, it is also true that plaintiff's attempts to excuse his failure to pursue more aggressive treatment cannot be wholly excused due to his claims of financial hardship. Plaintiff did not seek low cost medical treatment and was not denied medical care due to his financial situation. *See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan,* 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not *ipso facto* preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted).

Plaintiff's own reports concerning his activities of daily living also contradict his claim of disability. On his supplemental interview outline, plaintiff reported an ability to care for his personal hygiene, go to the post office, prepare one to two meals per week, count change, drive, watch television, and listen to the radio. (Tr. 63-64). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

Therefore, although it is clear that plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Plaintiff also contends that the ALJ erred in finding that he maintained the RFC to perform a wide range of sedentary work. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.1545(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC

was "medical question,"and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, evaluations prepared by consultative examiners, the RFC assessment of a treating doctor, plaintiff's subjective complaints, and his medical records. On August 10, 2004, Dr. Robert Redd, a consultative consultant, reviewed plaintiff's medical records and completed an RFC assessment. (Tr. 126-136). He concluded that plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently, as well as sit, stand, and walk for six hours during an eight-hour workday. (Tr. 127). No other limitations were noted. (Tr. 128-134). This opinion was affirmed by Dr. Jerry Thomas on September 23, 2004. (Tr. 134).

Based on the entirety of the evidence, the ALJ determined that plaintiff could perform a significant range of sedentary work, limited by his ability to stand/walk for two hours out of an eight-hour workday; never climb, balance, stoop, crouch, kneel, or crawl; frequently perform fine manipulation; limited grip strength; and, need to avoid all exposure to heights. Following an independent review of the record in this matter, we find substantial evidence to support this conclusion. In so doing, we note that the evidence reveals that plaintiff's contention of disabling pain is not supported by the record. The medical evidence indicates that plaintiff suffered from only minor degenerative changes in his cervical and lumbar spine, as well as his shoulder. Further, his condition was amenable to conservative treatment and did not require surgery.

Although the plaintiff contends that the ALJ's RFC assessment is faulty because it does not specifically state how long plaintiff could sit during an eight-hour workday, we do not agree. A

13

finding of sedentary work implies that the plaintiff is capable of sitting for lengthy periods of time. *See* 20 C. F. R. § 404.1567. Further, in the hypothetical question posed to the vocational expert, the ALJ specifically stated that plaintiff could sit for eight-hours per day. (Tr. 106). *Reeder v. Apfel,* 214 F.3d 984, 988 (8th Cir.2000); *Boyd v. Sullivan,* 960 F.2d 733, 736 (8th Cir. 1992) (holding that a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case). There is no evidence to negate plaintiff's ability to sit and plaintiff, himself, indicated that he could participate in sedentary activities, including watching television, driving, and listening to the radio. Therefore, the ALJ's RFC assessment will stand.

We also find that substantial evidence supports the ALJ's finding that plaintiff could perform work as a driver, interviewer, and call-out operator. Pursuant to interrogatories, a VE indicated that a person of plaintiff's age and experience, who could lift, carry, push, and pull five pounds frequently and ten pounds occasionally and stand and walk two hours per day and sit for eight hours per day but could not climb, balance, stoop, crouch, kneel, or be exposed to unprotected heights and unprotected moving machinery, could perform work as a driver, interviewer, and call-out operator. (Tr. 106-109). After reviewing the evidence of record, we find that the hypothetical question posed to the vocational expert fully set forth the impairments that the ALJ accepted as true and were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).

14

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 25th day of June 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE